**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 10, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TED CARROLL and BELLA CARROLL,
individually and as parents and next friends
of AKC, a minor,

     Plaintiffs - Appellants,

v.

                        No. 14-6245

LAWTON INDEPENDENT SCHOOL
DISTRICT NO. 8; VICKIE CANTRELL,
individually; LYNN FITZ, individually;
JOHN WHITTINGTON, individually,

     Defendants - Appellees.
_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:13-CV-00407-M)**
_____

Courtney D. Powell, Lester, Loving & Davies, P.C., Edmond, Oklahoma, for Plaintiffs-Appellants.

Jerry A. Richardson, Rosenstein, Fist & Ringold, Tulsa, Oklahoma (Kent B. Rainey and Staci L. Roberds, Rosenstein, Fist & Ringold, Tulsa, Oklahoma; and Charles E. Wade, Wade & Mackey, Lawton, Oklahoma, with him on the briefs), for Lawton Independent School District No. 8, Defendant-Appellee.

Mark S. Rains, Mark Rains Attorney at Law PLLC, Jenks, Oklahoma, for Vickie Cantrell, Defendant-Appellee.
_____

Before **HOLMES**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.

_____

## I. INTRODUCTION

This appeal arises from allegations that AKC, a child with autism, suffered abuse at school by her special-education teacher, Vickie Cantrell. AKC's parents, Ted and Bella Carroll, filed suit in federal district court against Ms. Cantrell, the school district, and others, seeking damages under the Americans with Disabilities Act (the ADA), Section 504 of the Rehabilitation Act, 42 U.S.C. § 1983, and a variety of state-law theories. The district court dismissed the Carrolls' federal claims, concluding the Carrolls had not exhausted their administrative remedies before filing suit as required by section 1415(*l*) of the Individuals with Disabilities Education Act (the IDEA). The district court then dismissed the Carrolls' complaint, declining to exercise supplemental jurisdiction over their state-law claims. The Carrolls appeal.

The single issue on appeal is whether the district court erred in determining the Carrolls' federal claims were subject to the IDEA's exhaustion requirement. Because we conclude the Carrolls' complaint alleges educational injuries that could be redressed to some degree by the IDEA's administrative remedies, we agree with the district court that exhaustion of those remedies was required before the Carrolls could file suit. We therefore affirm the district court's dismissal of the Carrolls' complaint.

## II. BACKGROUND

### A. *Factual History*

AKC is a minor child and a student at Pat Henry Elementary School, a public school in Oklahoma's Lawton Independent School District No. 8 (the School District).[1] Ms. Cantrell was AKC's third-grade teacher at Pat Henry. AKC is autistic and her autism impairs her ability to verbally communicate. She received education assistance under the IDEA through an Individualized Education Program, or IEP.

In May 2012, the Carrolls discovered AKC had been injured at school. Upon further inquiry, the Carrolls learned that Ms. Cantrell had "'punished' AKC by pulling her undergarments so hard into a 'wedgie' that AKC's underwear was torn" and that AKC "had been placed in a dark closet on previous occasions." The Carrolls were never previously informed of disciplinary issues involving AKC or told that AKC had been disciplined.

As a result of the "punishments," AKC now refuses to get out of the car to go into the school building and becomes upset and agitated when she enters the school. Once inside, she does not want to leave her parents' side. The incident "damaged AKC's overall academic progress as well as her emotional health" and "[t]he impact of these punishments, coupled with AKC's autism, significantly altered AKC and her ability to attend and participate in the educational process." AKC's academic achievement has also been negatively impacted, and she will require tutoring to

---

[1] Because this appeal is taken from the grant of a motion to dismiss, we recite the facts as alleged in the Carrolls' complaint and in the light most favorable to them. *Albers v. Bd. of Cty. Comm'rs*, 771 F.3d 697, 699 n.1 (10th Cir. 2014).

return to her previous academic level. Since the incident, AKC has regularly acted out against others and cannot participate in normal children's activities like summer day camp. AKC's behavioral problems are so severe Mr. Carroll had to leave his job to stay home and care for AKC.

### B. Procedural History

The Carrolls filed suit, naming as defendants Ms. Cantrell, the School District, and two other School District employees. The Carrolls asserted a range of state-law claims against the defendants, including negligence, intentional infliction of emotional distress, assault, battery, conspiracy, and violation of due process under the Oklahoma Constitution. The Carrolls brought their federal claims under the ADA, Rehabilitation Act, and § 1983 only against the School District. The Carrolls requested compensatory damages including medical expenses and damages for pain and suffering, punitive damages, and costs and expenses, including reasonable attorney fees.

All defendants moved to dismiss. The district court first considered whether the Carrolls' federal claims were subject to the IDEA's exhaustion requirement. The district court concluded the Carrolls' ADA and Rehabilitation Act claims alleged educational injuries and that exhaustion was therefore necessary. But the district court concluded the Carrolls' § 1983 claim was premised only on the physical injuries suffered by AKC and that exhaustion was not required as to that claim. Thus, the district court dismissed the Carrolls' ADA and Rehabilitation Act claims against the School District for failure to exhaust administrative remedies, concluding it

4

lacked subject-matter jurisdiction over the unexhausted claims. The district court then dismissed the remainder of the Carrolls' claims for failure to state a claim upon which relief could be granted, with the exception of an unchallenged negligence claim against the School District. But the district court gave the Carrolls leave to amend their § 1983 and Oklahoma Constitutional claims against the School District and their assault, battery, and intentional-infliction-of-emotional-distress claims against Ms. Cantrell.[2]

The Carrolls amended their complaint to allege additional facts in support of their claims against the School District and Ms. Cantrell, and the defendants again moved to dismiss. The district court reevaluated the Carrolls' § 1983 claim in light of the amendments to the complaint, concluding that "even though generally alleged, plaintiffs have alleged educational harms requiring plaintiffs to exhaust their administrative remedies under the IDEA." The district court therefore dismissed the Carrolls' amended § 1983 claim for failure to exhaust. Having dismissed the last of the Carrolls' federal claims, the district court declined to exercise supplemental jurisdiction over their state-law claims and dismissed the Carrolls' complaint.

### III. DISCUSSION

The Carrolls argue the district court erred in dismissing their federal claims for failure to exhaust their administrative remedies. They contend their claims as alleged are not subject to the IDEA's exhaustion requirements or, in the alternative, that the

---

[2] The district court did not give the Carrolls leave to amend their claims against the School District employees other than Ms. Cantrell, and the Carrolls have not challenged on appeal the dismissal of their claims against those defendants.

district court abused its discretion in denying them leave to allege additional facts showing exhaustion or the futility of pursuing administrative relief.

## A. *The Carrolls' Federal Claims Are Subject to the IDEA's Exhaustion Requirement.*

"We review the denial or grant of a motion to dismiss de novo, applying the same standard used by the district court." *Padilla ex rel. Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268, 1271 (10th Cir. 2000) (internal quotation marks omitted). We accept all well-pleaded factual allegations in the complaint as true and view those allegations in the light most favorable to the nonmoving party. *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

## 1. Exhaustion Under the IDEA

The Carrolls first argue the district court erred in concluding that their ADA, Rehabilitation Act, and § 1983 claims are subject to the IDEA's exhaustion requirement. The IDEA is a federal statute that "imposes obligations on the states to provide certain benefits in exchange for federal funds." *Ellenberg v. N.M. Military Inst.*, 478 F.3d 1262, 1274 (10th Cir. 2007). A state accepting such funding must "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). Educational services must be provided in accordance with the child's IEP, which "sets forth the child's present performance level, goals and objectives, specific services that will enable the child to meet those goals, and evaluation criteria and procedures to determine whether the

6

child has met the goals." *Ass'n for Cmty. Living in Colo. v. Romer*, 992 F.2d 1040, 1043 (10th Cir. 1993).

The IDEA also creates a mandatory administrative framework for resolution of disputes over the education of children with disabilities: If a parent has a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," 20 U.S.C. § 1415(b)(6)(A), the IDEA entitles the parent to an "impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency," *id.* § 1415(f)(1)(A). If the parent is unsatisfied with the outcome of the due process hearing, he or she "may appeal such findings and decision to the State educational agency." *Id.* § 1415(g)(1). These administrative remedies must be exhausted before a civil action may be filed in district court under the ADA, Rehabilitation Act, or "other Federal laws protecting the rights of children with disabilities," if the plaintiff "seek[s] relief that is also available under [the IDEA]." *Id.* § 1415(*l*).

In interpreting § 1415(*l*), this court has read "available" relief to mean "relief for the events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers or specifically seeks." *Padilla*, 233 F.3d at 1274 (citation and internal quotation marks omitted). Our exhaustion inquiry therefore focuses on "the source and nature of the alleged injuries for which he or she seeks a remedy," not the specific remedy sought. *Id.* Thus, "the dispositive question

generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies." *Id.* "If so, exhaustion of those remedies is required." *Id.; see also Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1067 (10th Cir. 2002) ("[W]here the alleged injuries were educational in nature and therefore presumptively redressable through the IDEA's administrative procedures . . . we would require exhaustion." (internal quotation marks omitted)). And "the IDEA's exhaustion requirement will not be excused simply because," as in this case, "a plaintiff requests damages, which are ordinarily unavailable in administrative hearings held pursuant to the statute, if his alleged injuries could be redressed under the IDEA." *Cudjoe*, 297 F.3d at 1066–67 (citations omitted). Finally, we construe ambiguities in favor of exhaustion. In *Padilla* we explained, "Where the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required in order to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem." 233 F.3d at 1274. By "focusing on whether there is any relief available under the IDEA to remedy the injury, as opposed to the particular relief sought by the plaintiff," the IDEA process cannot be "short-circuited by a rush to court seeking damages." *Cudjoe*, 297 F.3d at 1067 (internal quotation marks omitted).

## 2. The Carrolls' Claims

We agree with the district court that the Carrolls have alleged educational injuries that could be redressed to some degree by the IDEA's administrative remedies. The complaint alleges that Ms. Cantrell, AKC's teacher, "'punished' AKC

by pulling her undergarments so hard into a 'wedgie' that AKC's underwear was torn" and that "in addition to the 'wedgie' punishment AKC had been placed in a dark closet on previous occasions." The complaint further alleges that, as a result of these "punishments," AKC "suffered and continues to suffer," particularly with respect to her education: AKC now refuses to get out of the car to go into the school building and becomes upset and agitated as she enters the school. The punishments "damaged AKC's overall academic progress as well as her mental and emotional health" and "[t]he impact of these punishments, coupled with AKC's autism, significantly altered AKC and her ability to attend and participate in the educational process." AKC's academic achievement has also been negatively impacted and she will require tutoring to return to her previous academic level. Finally, the complaint alleges that "AKC was excluded from participating in and denied the benefits of the educational programs offered by [the School] District."

These allegations of injuries to AKC's academic progress and access to educational programs are unambiguously "educational in nature and therefore presumptively redressable through the IDEA's administrative procedures." *Cudjoe*, 297 F.3d at 1067. Though not all of the injuries alleged in the complaint are educational, the Carrolls have "alleged injuries that could be redressed to [some] degree by the IDEA's administrative procedures and remedies." *Padilla*, 233 F.3d at 1274. The Carrolls therefore "seek[] relief that is also available under [the IDEA]," and their federal claims are subject to the IDEA's exhaustion requirement. 20 U.S.C.

9

§ 1415(*l*); *Padilla*, 233 F.3d at 1274. The Carrolls resist this conclusion in three ways.

The Carrolls first argue "[e]xhaustion is not required where the complaint alleges physical, non-educational injuries." In *Padilla*, we concluded that, under the "narrow circumstances" of that case, the plaintiff was not required to exhaust her claims arising from a skull fracture she suffered while restrained in a windowless closet without supervision. *Id.* at 1274. We noted the plaintiff sought "damages solely to redress the fractured skull and other physical injuries she suffered" and made "no complaints regarding her current educational situation." *Id.* We also observed "she expressly attests that her new school meets her educational needs and that she presently receives the full benefits of a free and appropriate education in an integrated, least restrictive educational environment." *Id.* (internal quotation marks omitted). Under these circumstances, we reasoned that the IDEA's administrative remedies, which are targeted at providing prospective educational benefits, could provide no relief for the plaintiff's "severe physical, and completely non-educational, injuries." *Id.*

Here, as discussed above, the Carrolls have alleged a number of "complaints regarding [AKC's] current educational situation." *Id.* at 1274. The IDEA's prospective educational benefits are presumptively well suited to remedy the alleged educational injuries. *Cudjoe*, 297 F.3d at 1067. Thus, unlike *Padilla*, this is not a case involving *solely* "severe physical, and completely non-educational, injuries" for which the IDEA can offer no remedy. *Padilla*, 233 F.3d at 1274. The allegation of

educational injuries removes this case from the "narrow circumstances" that we concluded made exhaustion unnecessary in *Padilla*. *Id.* While the School District may not ultimately succeed in remedying all of the injuries alleged through the administrative process, it must be given "an initial opportunity to ascertain and alleviate the alleged problem." *Id.*

Next, the Carrolls argue that "[f]or the exhaustion requirements to be triggered, there must be an 'educational source' and an 'adverse education[al] consequence.'" *See Cudjoe*, 297 F.3d at 1067 (observing that "courts consistently have required exhaustion for alleged acts that both have an educational source and an adverse educational consequence" (internal quotation marks omitted)). "The IDEA offers redress for claims whose genesis and manifestation . . . are educational." *Id.* (omission in original) (internal quotation marks omitted). The Carrolls contend exhaustion is not required here because their claims arise from Ms. Cantrell's conduct in "punish[ing]" AKC, rather than "from some allegation that the education or services rendered by the [School] District are inadequate."

However, the Carrolls' attempt to limit the IDEA's reach to claims of inadequate provision of educational services is inconsistent with our case law. We have long recognized a "close relationship between the use of discipline and in-class instruction in providing a child with a 'free appropriate public education.'" *Hayes ex rel. Hayes v. Unified Sch. Dist. No. 377*, 877 F.2d 809, 813 (10th Cir. 1989). In *Hayes* we rejected the argument that disciplinary measures did not involve the provision of a "free appropriate public education" and that they thus fell outside the

11

scope of the IDEA's predecessor, the Education of the Handicapped Act. *Id.* at 812–13. We observed that the statute provides administrative remedies "'with respect to *any matter relating to* . . . the provision of a free appropriate public education.'" *Id.* at 813 (emphasis in original) (quoting 20 U.S.C. § 1415(b)(1)(E)). Concluding that "[p]roper conduct and education are inextricably intertwined," we held that "discipline of a child in the classroom . . . is a matter that relates to the public education of a handicapped child and that therefore falls within the scope of the [IDEA]." *See id.* (alteration in original) (internal quotation marks omitted). Accordingly, we cannot agree the allegations of classroom discipline here—that AKC was "punished" by her teacher, at school and during the school day—do not constitute an "educational source" for AKC's injuries.

Last, the Carrolls argue they are excepted or excused from the exhaustion requirement under the facts of this case. Exhaustion under the IDEA is not required "when administrative remedies would be futile, when they would fail to provide relief, or when an agency has adopted a policy or pursued a practice of general[] applicability that is contrary to the law." *Urban ex rel. Urban v. Jefferson Cty. Sch. Dist. R-1*, 89 F.3d 720, 724 (10th Cir. 1996) (internal quotation marks omitted). But unless the case "falls within one of the three exceptions, [plaintiffs are] not entitled to judicial review . . . absent exhaustion of [the IDEA's] administrative remedies." *Id.*

The Carrolls contend "[e]xhaustion in this case not only fails to provide relief but would be futile." But in raising this argument they merely restate their position that they are seeking damages for Ms. Cantrell's conduct rather than "a failed or

12

flawed IEP." As explained above, our interpretation of the IDEA is broad enough to reach Ms. Cantrell's conduct in this case, and the IDEA's exhaustion requirement is not limited to challenges to a child's IEP. Nor does the Carrolls' request for only damages render futile a consideration of AKC's educational injuries in the administrative process. While damages are normally unavailable through the administrative process, *Cudjoe*, 297 F.3d at 1066, the School District may be able to provide other relief for AKC's educational injuries. And it is entitled to make that effort before being exposed to a lawsuit for damages. *Id.* at 1065. The Carrolls do not otherwise explain why it would be futile to request relief through the administrative process for the injuries alleged in their complaint—injuries we have determined are, for the most part, educational and therefore presumptively redressable through the IDEA's administrative process—or why no relief for these injuries could be obtained through that process. We are therefore not convinced the Carrolls' claims fall within one of the enumerated exceptions to the IDEA's exhaustion requirements.

In summary, the Carrolls have alleged that AKC's educational progress has been impeded, that she has been excluded from access to educational programs, and that she will require remedial education in the form of tutoring to return to her proper academic level. Under the IDEA, the school is entitled to "at least the first crack at formulating a plan to overcome the consequences of educational shortfalls." *Id.* (internal quotation marks omitted). Thus, the Carrolls were required to exhaust their

13

administrative remedies before bringing their claims in the district court.[3] The district court therefore properly dismissed the Carrolls' federal claims seeking relief "also available" under the IDEA.[4]

Our disposition of this argument also resolves the Carrolls' claim that the district court erred in declining to exercise supplemental jurisdiction over the Carrolls' state-law claims. That claim is premised upon a conclusion that the district court's dismissal of the Carrolls' federal claims was erroneous, and the Carrolls argue only that it would be error for the district court to decline supplemental jurisdiction over the state law claims while adjudicating the federal claims. Because we conclude the district court correctly dismissed the Carrolls' federal claims, it did not abuse its discretion in declining supplemental jurisdiction over the state-law

---

[3] The Carrolls also argue that requiring them to exhaust their administrative remedies violates AKC's right to equal protection. Specifically, they contend that "[r]equiring exhaustion of the IDEA's administrative requirements when there is no educational source to trigger the IDEA places additional burdens on AKC because of her disability." As discussed, the Carrolls have alleged educational injuries for which relief is available under the IDEA. Thus, contrary to the Carrolls' argument, there is an "educational source to trigger the IDEA." The Carrolls do not argue the broader issue of whether the IDEA's exhaustion requirement is constitutional when otherwise validly applied, and we therefore decline to address it.

[4] The parties dispute whether the IDEA's exhaustion requirement is a jurisdictional requisite or an affirmative defense. However, as we have previously recognized, this characterization "is important . . . only when the defendant has waived or forfeited the issue." *McQueen ex rel. McQueen v. Colo. Springs Sch. Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007); *accord Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 784 (10th Cir. 2013) (concluding "IDEA exhaustion's status as a jurisdictional prerequisite is not at issue" because the defendants raised IDEA exhaustion below and on appeal). Because the School District here raised the exhaustion requirement in its motion to dismiss and has renewed that argument on appeal, we need not decide whether exhaustion is jurisdictional because the result is the same in either case.

claims. *See* 28 U.S.C. § 1367(c)(3). The district court therefore did not err in dismissing the Carrolls' complaint.

**B.** *The District Court Properly Denied the Carrolls' Request for Leave to Amend.*

Last, the Carrolls argue the district court abused its discretion by denying their request for leave to amend their ADA and Rehabilitation Act claims. They assert that, had they been given leave to amend, "additional facts would have been alleged regarding meetings with numerous District officials regarding the abuse; a police investigation into the abuse; and multiple meetings with various District employees relating to AKC's IEP after the abuse occurred." Relying on *Muskrat v. Deer Creek Public Schools*, 715 F.3d 775 (10th Cir. 2013), the Carrolls contend these allegations would have supported a claim that the exhaustion requirement was satisfied or excused despite their failure to request a due process hearing or otherwise comply with IDEA's specific procedures.

Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). We review for an abuse of discretion a district court's denial of leave to amend. *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty., Colo.*, 771 F.3d 697, 700–01 (10th Cir. 2014). We conclude the Carrolls have failed to demonstrate an abuse of the district court's discretion for two reasons.

First, the Carrolls never moved for leave to amend their complaint but rather asked for leave to amend as an alternative to dismissal in their opposition to the School District's motion to dismiss. "Rule 7 requires a request for relief to be made by a motion that (1) is in writing, (2) 'states with particularity the grounds for

15

seeking the order,' and (3) specifies the relief sought." *Albers*, 771 F.3d at 706 (quoting Fed. R. Civ. P. 7(b)(1)). "We have recognized the importance of Fed. R. Civ. P. 7(b) and have held that normally a court need not grant leave to amend when a party fails to file a formal motion." *Id.* (internal quotation marks omitted).

Second, and more fundamentally, the Carrolls failed to identify the specific factual allegations they would allege in an amended complaint. "[A] bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based." *Id.* Rather, the plaintiff must "specify the new factual allegations that would correct the defects in their [complaint]." *Id.* In seeking leave to amend below, the Carrolls stated, "If Plaintiffs were granted . . . leave to amend, additional facts would be alleged regarding meetings with numerous District officials regarding the abuse; a police investigation into the abuse; and multiple meetings with various District employees relating to AKC's IEP after the abuse occurred." The Carrolls present a functionally identical assertion in their appellate briefing. But nowhere have they set forth the specific factual allegations that would establish exhaustion or an exception thereto.

The Carrolls' reliance on *Muskrat* to support their argument that they effectively exhausted their administrative remedies is misplaced. In *Muskrat,* the record demonstrated the plaintiffs had "worked through administrative channels to obtain the relief they sought," conferred with school staff, and obtained a favorable modification to their child's IEP as a result of their efforts. 715 F.3d at 786. The

16

court concluded that, "given the steps the Muskrats took and the relief they obtained, it would have been futile to then force them to request a formal due process hearing . . . simply to preserve their damages claim." *Id.* Thus, in *Muskrat,* the plaintiffs had already obtained all of the relief they could from the administrative process, and any further administrative proceedings regarding their remaining damages claim would be futile because damages are not available through the administrative process.

Here, the Carrolls merely set forth categories of allegations that could be pleaded; they did not present the district court with any specific factual allegations regarding the administrative steps already taken to obtain relief. Nor did they identify any specific allegations to demonstrate that, like *Muskrat*, they had obtained all of the educational relief available under the IDEA's administrative regime and therefore further exhaustion would be futile. Their appellate briefs fare no better on this score, reciting the same assertions without detailing any factual allegations. Because the Carrolls have "fail[ed] to specify the new factual allegations that would correct the defects in their [complaint]," the district court did not abuse its discretion in denying their informal request for leave to amend contained in their opposition to the District's motion to dismiss. *See Albers*, 771 F.3d at 706.

## IV. CONCLUSION

The Carrolls' complaint alleges educational injuries that could be redressed to some degree by pursuing the IDEA's administrative remedies. The Carrolls' federal claims are therefore subject to the IDEA's exhaustion requirement, and the district court did not err in dismissing those claims or abuse its discretion in declining

17

supplemental jurisdiction over the remaining state-law claims. Because the Carrolls failed to identify the new allegations that would allegedly correct the defects in their complaint, the district court did not abuse its discretion in denying their motion to amend. We therefore affirm the district court's dismissal of the Carrolls' complaint.